**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EDWIN ALLEN HARPER,**

      **Petitioner,**

**v.**                                              **Civil Action No. 3:08cv179**
                                                  **Criminal Action No. 3:07cr49-03**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**REPORT AND RECOMMENDATION
THAT §2255 MOTION BE DENIED**

**I. Introduction**

On December 9, 2008, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] The Government filed its response on February 3, 2009.[2] Petitioner did not file a reply to the Government's response. However, on February 17, 2009, petitioner filed a Motion for Summary Judgment,[3] which the Government responded to on February 19, 2009.[4] Petitioner filed a reply to the Government's Response to his motion for summary judgment on February 26, 2009.[5] On March 16, 2009, petitioner filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense pursuant to

---

[1] CR Dkt. No. 193.

[2] CR Dkt. No. 202.

[3] CR Dkt. No. 205.

[4] CR Dkt. No. 207.

[5] CR Dkt. No. 208.

1

18U.S.C.§ 3582.[6] Two days later, on March 18, 2009, the Government filed its Response in Opposition to petitioner's § 3582 motion.[7]

## II. Facts

### A. Conviction and Sentence

On September 5, 2007, petitioner signed a plea agreement, agreeing to plead guilty to Count 3 of a 15-count indictment, distribution of 1.15 grams of cocaine base in violation of Title 21, U.S.C. § 841(a)(1), and have the remaining charges against him dismissed.[8] (CR Dkt. No. 97 at 1 and 3). The maximum penalty for the offense being pled to was specified as not more than twenty (20) years imprisonment and a $1,000,000.00 fine (Id. at 2). The parties stipulated and agreed that the total drug relevant conduct of petitioner was 10.23 grams of cocaine base, also known as "crack." (Id. at 4). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 10. [Petitioner] . . . is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, [petitioner] knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. [Petitioner]. . . also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, [petitioner's] . . . waiver contained in this paragraph will be voided provided [petitioner] . . . complies with the provisions of

---

[6] CR Dkt. No. 214.

[7] CR Dkt. No. 216.

[8] Petitioner had been charged with 5 counts in the indictment: one count of conspiracy to distribute 50+ grams of crack cocaine and four counts of distributing crack cocaine. (CR Dkt. No. 1).

Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure. (Id. at 4).

On September 5, 2007, the petitioner, then aged 29 and possessing a GED, entered his plea in open court. (Dkt. No. 201 at 4). During the plea hearing, the Assistant U.S. Attorney read aloud in open court each paragraph of the plea agreement, including the paragraph 10 *supra*. The Court then asked petitioner whether he and his counsel had reviewed the plea agreement before he signed it, and petitioner stated that they had. (Id. at 13). The Court specifically asked petitioner if he understood the waiver of his appellate relief rights but did not ask petitioner about the waiver of his post-conviction relief rights. (Id. at 12-13). The Court then asked petitioner's counsel if he felt that his client understood the waiver of his appellate rights but did not ask petitioner's counsel about the waiver of post-conviction relief rights. (Id. at 13). The Court informed petitioner that the maximum sentence for the crime which he was pleading could be no more than twenty years imprisonment. (Id. at 15), but that the ultimate sentence could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 17). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the pre-sentence report (PSR) was completed and petitioner said "[y]es, sir." (Id. at 16 and 22-23). The Court then summarized the rights that petitioner was giving up by pleading guilty. (Id. at 18-19). During the plea hearing, the Government presented the testimony of State Trooper Brian Bean to establish the factual basis for the plea. (Id. at 20-21). Petitioner did not contest the factual basis for the plea.

After the factual basis for the plea was presented, the Court asked petitioner if he was, in fact, guilty of count 3 of the indictment and petitioner advised the Court that he was. (Id. at 22).

The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir, he has." (Id. at 23). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, sir." (Id. at 23). At the conclusion of the hearing, the Court determined that petitioner was competent, that he had made his plea freely and voluntarily with full understanding of its consequences, and that the elements of the crime in Count 3 had been proven beyond a reasonable doubt. (Id. at 23). Petitioner did not object to the Court's finding.

On December 12, 2007, petitioner appeared before the court for sentencing. Petitioner was found to have a base and adjusted offense level of 24 with a Chapter 4 enhancement for career offender status to 32 with a two-level reduction for acceptance of responsibility. (Dkt. No 184 at 6). An additional one-level reduction was granted, resulting in a total offense level of 29. (Id.). The Court found that the sentence guideline range was 151 to 188 months imprisonment. (Id.). The Court then heard argument from counsel. Petitioner's counsel voiced his objection to the PSR, briefed in his sentencing memorandum, regarding the unfairness of the application of the career offender status as to petitioner, and asked the Court for a sentence of "around 100 months." (Id. at 7-9). The Government responded, pointing out the dual purposes of correction and rehabilitation, and acknowledged the Court's desire and authority to give a variance. (Id. at 9-10). Taking all necessary information into consideration, the Court agreed with defense counsel that there was "some level of unfairness" in the career offender law, and accordingly, gave petitioner "a break in that regard," sentencing him to serve 120 months imprisonment (Id. at 12-13), to run concurrently with the undischarged term of imprisonment he was currently serving on West Virginia state charges. (Id. at 10).

4

B.  **Direct Appeal**

Petitioner did not file a direct appeal.

C.  **Federal Habeas Corpus**

Petitioner raises only one ground in his § 2255 motion: an ineffective assistance of counsel claim based on his counsel's inaccurate estimate of the potential sentence he would receive for pleading guilty, alleging two causes for the failure: that 1) his counsel failed to review his C.I.B. report to ensure accurate calculation of his criminal history points, and 2) his counsel failed to review and/or comprehend the criteria used to classify him as "career offender."

Petitioner asserts that since he only pled guilty because of the "grossly erroneous and incompetent advice of counsel" as to the length of the sentence he would receive, his plea was not knowing and voluntary. (Dkt. No. 193, Attach. 1 at 2). Petitioner contends that in an August 10, 2007 letter, counsel advised him that he if he pled guilty to Count 3, he would receive a sentence in the applicable range of 57-71 months, and that "[s]o long as you don't commit any additional charges, I don't anticipate a sentence beyond the low end of [this] range." (Id. at 1), and that his attorney's letter also stated that since his prior convictions were consolidated for sentencing they only counted as one conviction, so "[t]herefore, I do not believe that you qualify as a career offender."(Id.)[9]

The Government contends that petitioner knowingly and voluntarily waived his right to bring a § 2255 motion (Dkt. No. 202 at 3); that petitioner failed to "demonstrate a fair and just reason" for his sentence to be vacated. (Id. at 7); and that petitioner's claims did not satisfy the prejudice prong of the Strickland test. (Id. at 8).

---

[9] Petitioner did not provide a copy of this letter with his § 2255 motion.

5

**D. Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction. Further, petitioner's claim of ineffective assistance of counsel has no support in either fact or law.

### III. Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**A.    Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so

6

long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the

7

scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth

8

Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

During the Rule 11 colloquy in the case at hand, the Court specifically inquired whether petitioner understood his waiver of appellate rights contained in the plea agreement. (CR Dkt. 201, Plea Hearing Transcript at 12 and 17). This inquiry appropriately established that petitioner knowingly and voluntarily waived his right to appeal. However, the Court did not inquire of petitioner whether petitioner understood that, under the plea agreement, he was waiving his right to seek post-conviction relief by filing a habeas corpus petition under Title 28, United States Code, Section 2255. Therefore, as the preceding review of cases indicate, petitioner did not validly waive his right to file this instant petition and accordingly, it should be given full consideration. However, here, in the memorandum of law to his § 2255 motion (titled "Attachment"), petitioner admits awareness of his knowing and voluntary waiver of his post-conviction relief rights, stating that "[u]nder this [plea] agreement . . . [he] "waived his right to appeal any sentence within the statutory maximum and waived his right to challenge his sentence via habeas corpus." (CR Dkt. 193, Attach. 1 at 2). Accordingly, even though petitioner's Rule 11 colloquy failed to elicit his acknowledgment of his understanding regarding the waiver of his post-conviction relief rights, in this case, as

10

provided by United States v. Blick, *supra* at 169, considering the totality of the particular facts and circumstances, it is clear that petitioner still understood that he was doing so. Because petitioner entered into his plea knowingly and voluntarily, he waived his right to collaterally attack his sentence and this motion under § 2255 should be dismissed. However, to leave no stone unturned in examining petitioner's claims, the ground for his § 2255 motion will still be reviewed.

**B.      Ground One: Whether Counsel's Performance was Ineffective for Inaccurately Predicting the Length of the Sentence Petitioner Would Receive for his Guilty Plea**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner contends that counsel erroneously informed him that the range of the sentence he would receive for his plea would be 57-71 months, and that had he known he would be sentenced to 120 months, he would not have pled guilty.

This claim must fail. The Fourth Circuit, as well as several other circuits of the United States Court of Appeals, have held that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." McLachlan v. United States, 2008 U.S. Dist. Lexis 10611 at 6, quoting Hughes v. United States, 2007 U.S. Dist. Lexis 19416, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), cert. denied, 549 U.S. 1151, 127 S. Ct. 1027, 166 L. Ed. 2d 774 (2007); United States v. Foster, 68 F.3d 86 (4th Cir. 1995). Indeed, it has been noted that

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore, . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

McLachlan at 6, quoting Hughes, 2007 U.S. Dist. Lexis 19416, 2007 WL 841940 at *5, citing United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

Not only does petitioner's claim have no support in the law, the facts he alleges are not even

supported by the record. Even overlooking petitioner's failure to produce a copy of the alleged letter from counsel that purportedly contained 'grossly erroneous and incompetent" advice regarding the length of his potential sentence, eight days after the letter was sent, petitioner signed a plea agreement that clearly stated that the maximum sentence he could receive was twenty years. Approximately three weeks after that, he entered his plea in open court after each and every paragraph of the plea agreement was read aloud. He then testified that: he and his counsel had reviewed the agreement before he signed it; he understood that his maximum sentence could be no more than twenty years; that the sentence he received might be different than that estimated by his counsel; and that no one could predict the length of his sentence until the PSR was completed. Petitioner also said that he was completely satisfied with his counsel, that his lawyer had done a good job, had left nothing undone that he thought should have been done, nor had he done anything improperly.

At the sentencing hearing, petitioner's counsel advanced the argument that even though the PSR determined that he was a career offender, for petitioner to receive an sentence enhancement for career offender status would be unfair, asking the Court to give him no more than 100 months sentence. The government conceded somewhat by recommending sentencing at the low end of the guideline. As a result of petitioner's counsel's vigorous and able efforts on his behalf, the Court was persuaded to give petitioner a downward sentence variance from the guideline of 151 to 188 months, to 120 months, noting that it could not overlook the seriousness of petitioner's crimes.

Further, there is no support in the record for petitioner's contention that his counsel failed to review or comprehend his career offender status criteria, or that his counsel failed to review his C.I.B. report to ensure accurate calculation of his criminal history points. To the contrary, it is

13

apparent that petitioner's counsel was very well-informed as to petitioner's criminal history points, having fully briefed the issue of petitioner's eligibility for career offender status in his sentencing memorandum as an objection to the PSR. Petitioner has provided no proof that counsel incorrectly advised him that his sentence would not exceed 57-71 months, only allegations. Even assuming this claim is true and that his counsel did provide an inaccurate prediction on August 7, 2007, petitioner did not sign the plea agreement that clearly informed him otherwise until eight days later, on August 15, 2007, and he did not enter his plea in open court until September 5, 2007, three weeks after that. Had the initial information regarding his potential sentence actually been inaccurate, he had multiple opportunities to learn otherwise before he ever entered his plea.

This claim has no merit. Moreover, petitioner has neither shown that his counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment, nor that he was prejudiced in any way by his counsel's inaccurate prediction.

### IV. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727

F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: August 12, 2009

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE